IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


THE ESTATE OF MICHAEL THOMAS,                                        PLAINTIFF
DECEASED, WESSIE LEE THOMAS,
ADMINISTRATRIX

VS.                                                CIVIL ACTION NO.:3:02-cv-1490WS

UNITED STATES FIDELITY AND
GUARANTY INSURANCE COMPANY                               DEFENDANTS


## ORDER GRANTING SUMMARY JUDGMENT

On an earlier day, this court heard arguments of counsel on their respective motions for

summary judgment, plaintiff having filed its motion pursuant to Rules 56(a) and (c)[1] while

---

[1]Federal Rule of Civil Procedure 56(a) reads as follows:

> A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

1

defendant submitted its motion under Rules 56(b)[2] and (c).  Each party contends that the genuine issues of facts are undisputed.

The plaintiff here is the estate of Michael Thomas, deceased, with Wessie Lee Thomas as the administratrix.  The defendant is United States Fidelity and Guaranty Insurance Company ("USF&G").  By this lawsuit, plaintiff attacks the strictures of a purported structured settlement agreement between Michael Thomas and USF&G, more particularly the reversion clause contained within said settlement agreement, said agreement having been reached in a dispute between the parties generated by Wessie Lee Thomas' claim for workers' compensation benefits.

Upon the death of Michael Thomas, USF&G claimed the remainder monetary sums of the settlement agreement based upon USF&G's reading of the reversion clause in issue.  Plaintiff challenges USF&G's interpretation of the reversion clause, asserting claims of breach of contract, ambiguity and unconscionability.  Unpersuaded by plaintiff's arguments, this court instead is convinced by defendant's arguments and grants summary judgment to defendant for the reasons which follow.

## <u>Jurisdiction</u>

Federal courts are courts of limited jurisdiction, and require subject matter jurisdiction to be conferred by statute or the Constitution, in order to adjudicate a cause of action.  *McDonal v. Abbott Labs*, 408 F.3d 177, 181 (5th Cir. 2005).  A claim of federal subject matter jurisdiction

---

[2]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

brought under § 1332[3] requires that both diversity and the requisite amount in controversy must

be present.  *Id*.  USF&G is a Maryland corporation with its principle place of business in St.

Paul, Minnesota.  Plaintiff's decedent was a resident of Lincoln County, Mississippi.   Plaintiff

seeks actual damages in the amount of $1,000,000.00, as well as punitive damages in the amount

of $10,000,000.00, and "any other such relief as to which the Petitioner may be entitled."

Complaint, Count VIII.  Because the parties are diverse and the amount in controversy exceeds

the statutory minimum, diversity jurisdiction is proper under § 1332.  Pursuant to the teachings of

*Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), because of

diversity jurisdiction, this court must apply the substantive law of Mississippi to this dispute.

## Facts and Procedural Background

Michael Thomas was injured in the course of his employment and thereafter rendered a

quadriplegic.  USF&G provided his employer's Worker's Compensation coverage, and thus bore

responsibility for Thomas's benefits under this plan.  The parties executed a structured settlement

agreement, titled "Absolute Release and Settlement Agreement," on February 1, 1993.  USF&G

offered to pay for separate legal counsel for Thomas in the settlement process.  Thomas waived

this offer and chose instead to have his brother Al Thomas assist him in the negotiation process.

Al Thomas was present and signed the agreement at the time of its execution.

No dispute exists as to the benefits due to Thomas during his lifetime, that Thomas's

medical expenses were covered, or that USF&G paid Thomas as promised under the settlement

---

[3]Title 28 U.S.C. § 1332 provides the district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different states; . . ."

agreement.  The agreement provided that Thomas receive monthly payments,[4] which were duly

paid.  It further provided for a Trust Fund to be established in order to ensure adequate assets to

meet all medical needs, in the event of hospitalization or other additional expense.[5]  This was

funded primarily through the purchase by USF&G of annuities.

The annuities purchased provided a guaranteed income for a period of ten years, with a

clause stating that in the event of Thomas's death prior to the end of this ten year period,

payments due would be made to USF&G.[6]  Thomas's heirs advance a claim for payments made

during the forty-five month period between Thomas's death and the end of the ten-year period, as

well as for the net balance in the trust fund which was remitted to USF&G.[7]  Plaintiff makes an

additional claim of conversion for a motorized wheelchair which plaintiff now claims was taken

by defendant USF&G after Thomas's death.  Complaint, Count VI.

### Summary Judgment Standard

The standard for summary judgment requires that a movant meet the initial burden of

---

[4]The settlement provided for payments in the amount of $833.00 per month, guaranteed ten (10) years; $162.08 per month for life, ten (10) years, compounding annually at three percent (3%)(used to fund an additional Blue Cross medical policy); $10,500 per month for life, guaranteed ten (10) years, compounding annually at four percent(4%).  These funds were paid until Thomas's death.

[5]An initial amount of $100,000.00 was made to the Michael Thomas Irrevocable Medical Trust, followed by $10,000.00 annual payments.  The Trust had a net account balance of $60,252.73 at the time of Thomas's death.

[6]The Settlement Agreement & Absolute Release, page 4, states in relevant part:
"Designation of Contingent Beneficiary and Revocation of Designation:
"In the event Claimant fails to survive the guaranteed period of the monthly, annual and deferred payments, any payments to be made after the death of the Claimant,. . . , shall be made to [USF&G].
"Claimant reserves the right to change his beneficiary designation upon notification and approval of [USF&G]."

[7]Michael Thomas Irrevocable Medical Trust Agreement ¶ 4.1(d) provides that "[a]fter payment of all taxes, assessments and charges incident to the management of the Trust, . . ., the Trustee shall pay the remainder of the Trust Estate, including all remaining trust income, to the Trustor."

proving that "there is no genuine issue of material fact and . . . the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56( c);  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).  Once a motion for summary judgment has been entered, and the movant has

established the basis for its motion, the non-movant must demonstrate a "triable issue of fact as

to each of the elements required for establishment of the claim or claims asserted."  *Shirley v.*

*McCraney*, 241 F. Supp. 2d 677, 681 (S.D. Miss. 2001).

## Law and Argument

A settlement agreement is a contract.  *See In re Estate of Davis*, 832 So.2d 534, 536

(Miss. Ct. App. 2001) (*citing McManus v. Howard*, 569 So.2d 1213, 1215 (Miss. 1990);  *East v.*

*East*, 493 So.2d 927, 931-32)).  In addition to an offer, acceptance and consideration, the

settlement agreement must demonstrate a true meeting of the minds of the parties involved.  *Id.*

Acceptance of an offer and its terms is evidence of such a meeting of the minds.  *Edwards v.*

*Wurster Oil Co., Inc.*, 688 So.2d 772, 775 (Miss. 1997).  A meeting of the mind and acceptance

of an agreement  "could be inferred where the parties to a settlement announce in court that an

agreement has been reached and subsequently read the agreement into the trial court record."

*Davis*, 832 So.2d at 536;  *see also Carroll v. Henry*, 798 So.2d 560 (Miss. Ct. App. 2001).

Contracts are solemn obligations;  it is the function of the court to give effect to them as

written.  *HeartSouth, PLLC v. Boyd*, 865 So.2d 1095, 1105 (Miss. 2003).  Whenever possible the

court should look to the four corners of the contract to determine its interpretation.  *Id.  See also*

*Facilities, Inc. v. Rogers-USRY Chevrolet, Inc.*, 908 So.2d 107, 111 (Miss. 2005);  *Warwick v.*

*Gautier Utility Dist.*, 738 So.2d 212, 214 (Miss. 1999).  Clear and unambiguous terms should be

enforced as written, without attempt by the court to surmise any unexpressed intent of a party.

5

*Id.*; *Mississippi Farm Bureau Cas. Ins. Co. v. Britt*; *Clark v. State Farm Mut. Auto. Ins. Co.*, 725 So. 2d 779, 781 (Miss. 1998). "[T]he court will read the contract as a whole, so as to give effect to all of its clauses." *Warwick*, 738 So.2d at 214. Only after a court has determined a contract to be ambiguous can it look to the parties' interpretation. *Facilities, Inc.*, 908 So.2d at 111. If the court is unable to ascertain intent by examining the plain language contained within the four corners of the document, it will next apply canons of contract construction. *Id.* If this application fails to resolve ambiguities, only then may the court resort to consideration of extrinsic or parol evidence. *Id.*

Plaintiffs do not challenge the validity of the settlement agreement as a whole or dispute that Mississippi contract law governs this dispute. The arguments before the court are that USF&G breached the contract or, in the alternative, that disputed portions of the contract are ambiguous and/or unconscionable. The court will address each of these arguments in turn.

## ***Breach of Contract***

Plaintiffs assert that USF&G breached the terms of the settlement agreement when it accepted payments as beneficiary and did not pay the remaining benefits to Thomas's estate.[8] This court, applying the law of contract construction, looks to the language of the agreement, which names USF&G as beneficiary of the annuity payments. The Trust also provides that the net account balance is to be paid to USF&G upon Thomas's death. Thomas expressly reserved the right to change his beneficiary. No evidence is offered that he ever sought, or even

---

[8]Plaintiffs' <u>Motion for Partial Summary Judgment</u>, p.8, repeats the assertion in Count VIII of the original petition that "USF&G engaged in intentional, tortious breach of contract when it took the remaining assets as the beneficiary and refused to pay the remaining benefits to the Estate of Michael Thomas."

considered, doing so.  No language exists anywhere in the settlement agreement or the Trust that would suggest an obligation or intent of either party to transfer payments made after Thomas's death from USF&G to plaintiffs.  Courts are not at liberty to infer intent contrary to that set forth in the text of a contract.  *Warwick*, 738 So.2d at 214.  In accepting payment of funds due USF&G as intended beneficiary, USF&G followed rather than breached the terms of the contract.

### ***Contract Ambiguity***

Plaintiffs argue that the language of the settlement agreement is ambiguous. In evaluating whether an ambiguity exists, plaintiffs urge this court to look outside the four corners of the document and consider extrinsic documents and exhibits.[9]  The three-tiered test plaintiffs rely upon is essentially the same test followed in numerous other Mississippi courts.  This 3-step approach to contract interpretation requires the court to 1) follow the "four corners" test and look to the actual contract language; 2) if unable to translate a clear understanding of the parties' intent, apply the discretionary canons of contract construction; 3) if still unclear as to intent, the court should consider extrinsic or parol evidence.  *See, e.g., Facilities, Inc.*, 908 So.2d at 111; *HeartSouth*, 865 So.2d at 1105.  Application of this test, however, does not require this court to look beyond the first tier, if the "four corners" test sufficiently resolves the dispute.

Plaintiffs point to perceived inconsistencies within the four corners of the settlement agreement.  These purported ambiguities involve entirely different aspects of the agreement.  The first stated example is that the agreement declares itself binding upon the parties, as well as heirs, successors and assigns, and provides for guaranteed payments for ten (10) years, with remaining

---

[9]*See* plaintiff's <u>Motion for Partial Summary Judgment</u>, pp.12-15, citing *Tupelo Redevelopment Agency v. Abernathy*, –So.2d – (Miss. 2005) and referencing the Hayes memo, handwritten notes, and videotape.

payments to be made to Thomas's "heirs, successors, and assigns."  Plaintiffs argue that this

contradicts the clause which names USF&G as the beneficiary and states that payments go to

USF&G if Thomas dies before the ten-year period ends.  No ambiguity exists here;  the

beneficiary is the named successor to the payments and is clearly USF&G.  The issue of the

binding nature of the contract is separate from the issue of who the successors in interest are.

The next purported ambiguity is that in the payment schedule set forth in (B)(1) and (C)

of the agreement, the payee in one is referred to as the trustee of the Trust and in the other simply

the Trust.  Disagreement over the meaning of a word or provision will not render an entire

contract ambiguous.  *Whittington v. Whittington*, 608 So.2d 1274, 1278 (Miss. 1992).  The

disagreement here is not even raised by a party to the contract, but rather by a third party seeking

to alter the terms of a contract after it has been performed to the benefit of the true parties.  The

intent in each clause is clearly that the funds are to be deposited into Thomas's trust.  The issue

of the manner in which payments are made during Thomas's lifetime is wholly separate from the

issue of disposition of the remaining funds after his death.  The variation in wording does not in

any way present an ambiguity which could be construed to mean that Thomas's relatives should

receive these funds after his demise.

### *Unconscionability of Contract*

Next, plaintiffs argue both procedural and substantive unconscionability.  Procedural

unconscionability goes to the making of an agreement; substantive unconscionability goes to its

terms.  Procedural unconscionability may be evidenced by a lack of voluntariness, the use of

complex legalistic language or inconspicuous print, disparate sophistication or bargaining power

of the parties, or inadequate opportunity to study and inquire about contract terms.  *Pridgen v.*

*Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 657 (S.D. Miss. 2000).  A contract is substantively unconscionable when one that "no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other. . ." *Matter of Johnson's Will*, 351 So.2d 1339, 1341 (Miss. 1977) (quoting *Terre Haute Cooperage, Inc. v. Branscome*, 203 Miss. 493, 35 So.2d 537 (1948)).

Plaintiffs first attack the procedure by which this settlement was negotiated and entered into, arguing that Thomas lacked legal counsel, possessed only a tenth grade education, failed to understand and appreciate the terms of the agreement, and was taken advantage of by USF&G in its superior bargaining position.  The court is not persuaded by this argument, taking note of the following facts:  (1) there is no requirement that Thomas be represented by separate legal counsel in entering into this contract;  (2) Thomas expressly declined separate counsel;  (3) the contract was reviewed and approved by outside legal counsel, provided by the Mississippi Workers' Compensation Commission [MWCC];  and (4) the terms of the agreement were explained to both Thomas and his chosen representative, Al Thomas, both prior to and during the hearing at which the contract was formalized; and, the process was supervised and approved by the MWCC, who found that Thomas's interests and needs were properly protected.  In fact, the plaintiffs agree that Thomas was provided for under this agreement for the remainder of his life and, thus, clearly benefitted from its enforcement.

The evidence presented indicates that Thomas voluntarily and without coercion entered into this agreement, following a lengthy negotiation period in which he, his family, and the MWCC as a supervisory entity, had ample opportunity to raise questions and address concerns. During the hearing and formalization of this agreement, the essential terms were read into the

record and questions were addressed to his stated satisfaction, after which Thomas expressed his understanding and agreement with its terms. The court cannot under these facts find that the settlement agreement was procedurally unconscionable.

Plaintiff likewise fails to demonstrate substantive unconscionability. In arguing that this agreement violates public policy, plaintiff asserts that Thomas would never knowingly enter into an agreement that failed to provide for his mother and non-dependant adult siblings. This overlooks the public policy underlying worker's compensation benefits, which is to provide for the medical care and injury resultant needs of the injured worker. Defendant USF&G was obligated under its insurance policy to provide for Thomas's medical needs, which it did for the remainder of his life. In fact, the settlement agreement provided Thomas with some additional benefits not required by the insurance policy. USF&G was never under any obligation to provide for Thomas's family after his death, and no factual evidence is presented that Thomas believed that they were. The contract provided each party with benefits, granting Thomas a secure income and source of medical care for the remainder of his life and allowing USF&G to plan for efficiently meeting its obligations. No evidence exists that the terms of the contract were less than fair to either party. The only claim here is that they failed to provide monies to third parties not otherwise covered or entitled to benefits under the insurance policy provided by USF&G. This court rejects plaintiffs' claim of substantive unconscionability.

### *Conversion*

Count VI of plaintiff's complaint asserts a claim of conversion for a motorized wheelchair, with an asserted value of $20,000.00. It is undisputed that a motorized wheelchair was purchased by the Trust for use by Thomas. Plaintiff claims that USF&G took possession or

10

authorized the disposal of this chair after Thomas's death.  In plaintiff's motion for partial summary judgment, filed September 7, 2005, plaintiff also charges that USF&G similarly disposed of a specialized hospital bed which was likewise purchased by the Trust for Thomas's use [docket # 39].[10]  The complaint was never amended to add this claim, which was never raised until six years after Thomas's death and after expiration of the statute of limitations;  therefore, the disposition of the bed is not an issue before this court.

To prevail on the conversion claim, plaintiff must show that USF&G took wrongful possession, or exercised dominion over the wheelchair in exclusion or defiance of the owner's right, or made an unauthorized and injurious use of, or wrongfully detained the wheelchair after the owner's demand for its return.  *See Wilson v. General Motors Acceptance Corp.*, 883 So.2d 56, 68 (Miss. 2004).  USF&G presents two defenses: first, that the Trust was the purchaser and owner under the terms of the Medical Trust Agreement[11]; and second, that plaintiff has offered no evidence that USF&G ever possessed or disposed of the wheelchair.  The wheelchair was purchased six years prior to Thomas's death and was in his possession during that time.  USF&G states it had no reason to be at the nursing home or to obtain any items from the nursing home after his death.  USF&G further points out that plaintiff never made demand for the wheelchair until the filing of the lawsuit.  Neither party has any evidence to indicate what the nursing home did with the wheelchair following Thomas's death, or whether either party ever took possession.

---

[10]Plaintiff provides as attachment to the motion for partial summary judgment [docket # 39 (p.43)] a copy of e-mail transmissions regarding the hospital bed and asking about the possibility of either donating the bed or selling it as an offset on the indemnity payment by which it was purchased. The wheelchair, however, is not mentioned.

[11]Medical Trust Agreement, ¶ 4.1(d), directs the Trustee to "pay the remainder of the Trust Estate . . . to the Trustor."  USF&G states that the wheelchair would be an asset of the Trust Estate after Thomas's death.

Under these facts, even if able to establish a claim for ownership of the wheelchair, plaintiff cannot show that USF&G had possession or is otherwise liable for its conversion.

### Conclusion

This court finds that, applying the relevant laws of contract construction, the settlement agreement reached between Thomas and USF&G is neither ambiguous nor unconscionable, and that under its valid and binding provisions, the payments made to USF&G were proper.  The court finds no factual support for plaintiffs' claims to the disputed payments;  therefore, defendant's motion for summary judgment is granted.

The court will enter a final judgment in accordance with the local rules.

**SO ORDERED AND ADJUDGED,** this the 30th day of March, 2006.

**s/ HENRY T. WINGATE**

**CHIEF UNITED STATES DISTRICT  JUDGE**


Civil Action No.: 3:02cv1490WS
Order Granting Summary Judgment